**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Jetz Laundry Systems, Inc.,

      Plaintiff,

    vs.                         Case No. 2:04-cv-243
                                     JUDGE GRAHAM

Wingates, LLC,

      Defendant.

OPINION AND ORDER

Plaintiff Jetz Laundry Systems, Inc. brings this action to enforce a lease against defendant Wingates, LLC.  The complaint alleges that Jetz and Wingates are parties to a lease whereby Jetz rents space to operate coin-operated washers and dryers at Lincoln Park West, an apartment complex in Columbus, Ohio owned by Wingates.  Jetz seeks declaratory judgment that the lease is valid and enforceable until December 31, 2009.

This matter is before the Court on Wingates's motion to dismiss the complaint for lack of subject matter jurisdiction. Wingates argues that a bankruptcy court already rejected the laundry lease during the Chapter 11 proceedings of the company which preceded Wingates in owning Lincoln Park West.  Wingates contends that the lease was terminated in bankruptcy court and that this action amounts to nothing more than an improper attempt by Jetz to appeal the bankruptcy court's order.

For the reasons stated below, the motion to dismiss is denied.

I.    **Factual Allegations in the Complaint**

Plaintiff Jetz Laundry Systems is a Kansas corporation with its principal place of business in Kansas.  Defendant Wingates is a limited liability company that, according to the complaint, was neither formed in Kansas nor has its principal place of business in Kansas.

Port West Associates L.P. was the former owner of Lincoln Park West.  In December 1999, it entered into a lease agreement with Automatic Apartment Laundries, Inc. ("AAL") for AAL to install and operate coin-operated washers and dryers at Lincoln Park West.  AAL paid as rent to Port West a certain percentage of the monthly gross amount collected from the machines.  AAL assigned its interest in the lease to Jetz at some unspecified date.

On August 30, 2002, Port West filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio.  On July 15, 2003, the bankruptcy court issued an order (the "Sale Order") authorizing the sale of Lincoln Park West free of liens and interests.  The complaint alleges that AAL and Jetz were not provided prior notice and an opportunity to object to the Sale Order.  At some unspecified date thereafter, Lincoln Park West was sold to Wingates.

On November 24, 2003, the bankruptcy court issued a one-page order (the "Rejection Order") granting an unopposed motion by the bankruptcy trustee to reject the laundry lease.  See Compl., Ex. F. In the Rejection Order, the bankruptcy court also rejected an unrelated contract for cable television services.

On December 11, 2003, counsel for Jetz sent a letter to Matrix Realty Group, Inc. stating that Jetz wished to retain its interest

in the lease.  See Compl., Ex. C.  There is no indication in the complaint who Matrix Realty Group is or what relationship it had with either Jetz or Wingates.

On February 24, 2004, Wingates sent a letter to Jetz in which it acknowledged receipt of the December 11, 2003 correspondence. See Compl., Ex. F.  The letter stated that Wingates was the current owner of Lincoln Park West.  The letter asserted that the Sale Order terminated any interest Jetz had in the lease.

On March 24, 2004, Wingates notified Jetz via certified mail that Jetz should leave the premises of Lincoln Park West or else eviction proceedings would be initiated.  See Compl., Ex. J.

Jetz filed the current action in this Court on March 31, 2004, seeking declaratory judgment that the lease is valid and enforceable.  Wingates now moves to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).

## II.  Standard of Review

When a defendant raises the issue of lack of subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction in order to survive the motion.  See Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).  Rule 12(b)(1) motions for lack of subject matter jurisdiction come in two varieties.  See United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1995); Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  One variety, not pertinent here, is a "factual" attack, in which facts presented to the court give rise to a factual controversy regarding subject matter jurisdiction. See Ritchie, 15 F.3d at 598.  The other variety is a "facial"

attack on the subject matter jurisdiction alleged by the complaint, which merely questions the sufficiency of the pleading.  See id. In a facial attack, the court takes the allegations in the complaint as true.  That is the type of attack being made by Wingates.

## III. Discussion

Wingates argues that subject matter jurisdiction is lacking because the bankruptcy court's Rejection Order had the effect of terminating the lease.  According to Wingates, Jetz should have filed an appeal if it wanted to litigate the validity of the lease. Wingates argues that Jetz, by filing this action, is trying to circumvent the Rejection Order.

Jetz responds that the Rejection Order did not terminate its interest under the lease.  Jetz relies on Section 365(h) of the Bankruptcy Code in arguing that, it retained its interest even though the trustee rejected the lease.

Section 365(a) of the Bankruptcy Code "gives the trustee broad power, subject to court approval, to 'assume or reject any . . . unexpired lease of the debtor' in order to maximize the value of the debtors' estate by assuming leases beneficial to the debtor and rejecting leases that are not." Weingarten Nostat, Inc. v. Service Merchandise Co., Inc., 396 F.3d 737, 742 (6th Cir. 2005) (quoting 11 U.S.C. §365(a)).  This "means simply that if the trustee wishes to obtain for the estate the future benefits of the executory portion of the contract, the trustee must also assume the burdens of that contract, as an expense of bankruptcy administration (i.e., having priority over all pre-bankruptcy claims of creditors)."

Matter of Taylor, 913 F.2d 102, 107 (3d Cir. 1990).

With respect to an executory lease of real property, the Bankruptcy Code limits the power of rejection "so as to preclude eviction of the lessee."  Precision Industries, Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537, 546 (7th Cir. 2003).  In particular,

> If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—
>
> . . .
>
> (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

11 U.S.C. §365(h)(1)(A)(ii).

Section 365(h) "thus allow[s] a lessee to remain in possession of estate property notwithstanding the debtor-in-possession's decision to reject the lease."  Precision Industries, 327 F.3d at 546; see also In re Silberkraus, 253 B.R. 890, 908 (Bankr. C.D. Cal. 2000) (Section 365(h) "gives the lessee the option of either considering the lease terminated or staying in possession of the property for the balance of the current term").  In this way, the Code "strikes a balance" between the rights of the debtor and the lessee -- "the lessee retains the right to possess the property for the remainder of the term it bargained for, while the rejection frees the debtor-lessor of other burdensome obligations that it assumed under the lease."  Id.; see also In re Stein, 281 B.R. 845, 850-51 (Bankr. S.D.N.Y. 2002) (Section 365(h)(1) "grants the non-

debtor tenant the option to remain in possession throughout the term of the lease and any renewals, retain his rights under the lease, and offset any damages against the rent").

The Court concludes, therefore, that the bankruptcy court's Rejection Order did not terminate the laundry lease.  Contrary to Wingates's assertion, Jetz had no reason to appeal the Rejection Order because it did not impair the validity or enforceability of the lease.  See In re Bedford Square Associates, L.P., 247 B.R. 140, 145 (Bankr. E.D. Pa. 2000) (noting that "restrictive covenants enforceable under applicable non-bankruptcy law survive a §365(h) rejection").

It should be noted that Jetz's response brief discusses the issue of whether the Sale Order, as opposed to the Rejection Order, terminated the lease.  Jetz argues that the Sale Order did not terminate the lease.  Because Wingates did not raise this issue in its motion to dismiss, the Court declines to comment on the merits of Jetz's argument.  The Court observes, however, that its authority to decide the issue is uncertain.  See Precision Industries, 327 F.3d at 543 (where a lessee brought suit in district court to enforce the lease against a party who purchased a debtor's real property pursuant to a bankruptcy court's sale order, the court of appeals approved the district court's reference of the suit to bankruptcy court because "*res judicata* precludes a party to the sale proceeding from attacking the sale order by way of a new lawsuit").

**IV.** <u>**Conclusion**</u>

For the reasons stated above, defendant Wingates's September 1, 2004 motion to dismiss (doc. 11) is DENIED.


<u>s/ James L. Graham</u>
JAMES L. GRAHAM
United States District Judge

DATE: June 10, 2005

7